### JESSIE WALLACE et al v. HOWARD G. WALLACE.

*(Court of Appeals, September, 1915.)*

EVIDENCE—WHEN ATTORNEY MAY TESTIFY AS TO COMMUNICATION FROM CLIENT—CODE CIV. PRO., § 835.

1. A husband and wife consulted an attorney with reference to the drafting of mutual wills, which contained reciprocal conditions. *Held*, that the provisions of section 835 of the Code of Civil Procedure preventing an attorney from divulging communications from a client do not apply in a controversy arising between beneficiaries under such wills. The disability exists only when the communications are intended to be confidential. (Matter of Cunnion, 135 App. Div. 864, 201 N. Y. 123, distinguished.)

SAME—INDISPUTABLE EVIDENCE REQUIRED TO SHOW CONTRACT BY ONE SINCE DECEASED TO DISPOSE OF HIS PROPERTY IN A CERTAIN MANNER.

2. The evidence required to show a contract by one since deceased to dispose of his property in a certain manner after his death, must be clear and convincing, or it will not be regarded as sufficient.

SAME.

3. To attribute to a will the quality of irrevocability demands the most indisputable evidence of the argument which is relied upon to change its ambulatory nature, and presumptions will not take the place of proof.

SAME—INSUFFICIENCY OF EVIDENCE TO SHOW AGREEMENT TO MAKE MUTUAL WILLS.*

4. Evidence examined, and *held*, that testimony of witnesses to statements and declarations by decedents tending to show that they con-

---

* See Note, Mutual Wills, Vol. 11, p. 81.

tracted to make mutual irrevocable wills, together with such evidence
as the wills themselves present, is not sufficient to establish that fact.
(Rastetter v. Hoenninger, 214 N. Y. 66, distinguished.)

    Wallace v. Wallace, 158 App. Div. 273, affirmed.

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the second judicial department, entered July
31, 1913, affirming a judgment in favor of defendants entered
upon a dismissal of the complaint by the court on trial at Special
Term.

The nature of the action and the facts, so far as material, are
stated in the opinion.

John H. Jackson, Ambrose F. McCabe, Emma Asby and
Louis Bevier, Jr., for appellants.

The court at Special Term erred in striking out the testimony
of the witnesses Flynn, Devlin and Leddy. The testimony
should not have been stricken out as privileged, because the evi-
dence did not warrant the conclusion that the communications
of Mrs. Wallace to the attorney acting for both herself and her
husband were intended to be confidential as to her husband.
(McCulloch v. Hoffman, 73 N. Y. 616; Kent v. Harcourt, 33
Barb. 491; Jackson v. Woolsey, 11 Johns. 445; Mowell v. Van
Buren, 77 Hun, 569.) If two persons are cognizant of a com-
munication to an attorney of a matter involving a matter of
common interest, the communication is not privileged in a liti-
gation between those two persons involving that matter. (Hurl-
burt v. Hurlburt, 128 N. Y. 420; Sherman v. Scott, 27 Hun,
331; Britton v. Lorenz, 45 N. Y. 51; Sandiford v. Frost, 9 App.
Div. 44; Mertens v. Wakefield, 35 Misc. Rep. 508; Doheny v.
Lacy, 168 N. Y. 213; Rosenberg v. Rosenberg, 40 Hun, 91;
Smith v. Crego, 54 Hun, 22; Green v. Green, 58 Hun, 251.)
If two persons are, at the time of its making, cognizant of a
communication by one of them to his attorney, which does not
involve a matter of common interest, the communication is not

privileged in any litigation. (Baumann v. Steingester, 213 N. Y. 328; Matter of McCarthy, 55 Hun, 7; Matter of Simmons, 48 Misc. Rep. 484; Lecour v. Importers & Traders Bank, 61 App. Div. 163; People v. Buchanan, 145 N. Y. 1.) The error in striking out this evidence was highly prejudicial. (Edson v. Parsons, 155 N. Y. 555; Rastetter v. Hoenninger, 214 N. Y. 66; Orford v. Walpole, 3 Ves. 402.)

Clifford Couch and Franklin Couch, for respondents.

The court did not err in striking out the testimony of witnesses, clerks employed by the attorney who drew the will of May 18, 1894. (Code Civ. Pro., § 835; Matter of Cunnion, 135 App. Div. 864; Loder v. Whelpley, 111 N. Y. 239; Matter of Coleman, 111 N. Y. 220; B. M. E. Church v. Brooks, 143 App. Div. 685; Matter of Young, 14 A. & E. Ann. Cas. 596; Rintelen v. Schaefer, 152 App. Div. 727.) A judgment cannot be reversed for error in rejecting admissible evidence where the evidence if received would not have changed the result; such an error being harmless. (Matter of Rice, 81 App. Div. 223, 176 N. Y. 223; Prime v. City of Yonkers, 131 App. Div. 110; De St. Laurent v. Slater, 23 App. Div. 70; McSorley v. Hughes, 58 Hun, 360; Matter of Turner, 208 N. Y. 261; Horn v. Pullman, 72 N. Y. 269; Post v. B. H. R. R. Co., 195 N. Y. 62.) Appellants would not be entitled to judgment without reference to extrinsic proof of the contract alleged in the complaint, even if the contents of the will of Juliet Wallace of May 18, 1894, had been proved. (Rastetter v. Hoenninger, 151 App. Div. 853; Edson v. Parsons, 155 N. Y. 555; Driscler v. Van Den Hinden, 17 J. & S. 508; Miller v. Hill, 64 Misc. Rep. 199, 137 App. Div. 378, 203 N. Y. 654; Everdell v. Hill, 27 Misc. Rep. 285; Walpole v. Orford, 3 Ves. 402; Mahany v. Carr, 175 N. Y. 454; Rankin v. Simpson, 19 Penn. St. 471.) The Appellate Division having unanimously sustained the findings of

fact of the Special Term, that the plaintiffs had failed to prove the contract alleged in the complaint, the error, if any, of the Special Term in striking out admissible testimony is not reversible error. (Matter of Cameron, 47 App. Div. 120, 166 N. Y. 120; Kearney Co. v. Irvine, 126 Fed. Rep. 689; Kimbo v. Cont. Ins. Co., 101 Tenn. 245.) In an action in equity for the specific performance of a contract, the plaintiff must prove by full, clear, definite, satisfactory and indubitable evidence, first, the making of the contract; second, all the terms and conditions of the contract, specifically and distinctly, leaving none of them incomplete or in doubt or uncertain. The court cannot act on conjecture or compel the performance of a contract vague in its terms. (Winne v. Winne, 166 N. Y. 263; Tousey v. Hastings, 127 App. Div. 94; Holt v. Tuite, 188 N. Y. 17; Everdell v. Hill, 58 App. Div. 151; Pattat v. Pattat, 93 App. Div. 104; Rosseau v. Rosseau, 180 N. Y. 166; Crouse v. Frothingham, 97 N. Y. 105; Sarasohn v. Kamasky, 120 App. Div. 110; Gouge v. Gouge, 26 App. Div. 154; Dunckel v. Dunckel, 141 N. Y. 427.) In an action in equity for the specific performance of an oral contract alleged to have been made by a deceased person that his will shall not be changed or revoked, such contract must be clearly, definitely and fully established by the clearest, most convincing, most indisputable evidence. (Edson v. Parsons, 155 N. Y. 555; Wilson v. Heath, 23 Misc. Rep. 714, 718; Cross v. Cleary, 20 Ont. 542; Russell v. Sharp, 192 Mo. 270; Wilson v. Toothaker, 18 A. & E. Ann. Cas. 1190; Shaw v. Schoover, 130 Ill. 449; Kirk v. Middlebrook, 201 Mo. 245; Wood v. Chapin, 13 N. Y. 509; Josslyn v. Rockwell, 59 Hun, 129; People v. Stephenson, 11 Misc. Rep. 141; Hast v. Carroll, 85 Penn. St. 508; Allison v. Burns, 107 Penn. St. 50; Highlands v. P. & P. R. Co., 209 Penn. St. 286.) Alleged declarations of Juliet Wallace made May 14, 1894, to James P. Hoyt, and before the execution of wills of May 18, 1894, are not admissible in evidence to contradict the terms of the will of

James P. Wallace or to show that the absolute gift to Mrs. Wallace and to her heirs forever was conditional or in trust. (Throckmorton v. Holt, 180 U. S. 552; Stevens v. Van Cleve, 5 Wash. 569; Williams v. Freeman, 83 N. Y. 561; Dan v. Brown, 4 Cow. 453; Sugden v. St. Leonards, L. R. [1 P. D.] 154; Hammersley v. Lockman, 2 Dem. 524; Marx v. McGlynn, 88 N. Y. 357; Matter of Burbank, 104 App. Div. 312; Rothschild v. Goldenberg, 103 App. Div. 235; Underhill on Wills, § 220; White v. Hicks, 33 N. Y. 383; Jackson v. Kniffin, 2 Johns. 31; Matter of Kennedy, 167 N. Y. 163.)   Declarations of James P. Wallace alleged to have been made to Miss Whitcomb after the date of his will are not admissible in evidence.   (Throckmorton v. Holt, 180 U. S. 552; Matter of Burbank, 104 App. Div. 312; Cromer v. Pinckney, 3 Barb. Ch. 466; Johnson v. Cole, 178 N. Y. 364; Kelly v. Home Sav. Bank, 103 App. Div. 141; Schelps v. Bowery Sav. Bank, 97 App. Div. 434; Augermiller v. Ewald, 135 App. Div. 691; Eighmey v. People, 79 N. Y. 546; Jones on Ev., § 345; Sanford v. Ellithorp, 95 N. Y. 53; Tierney v. Fitzpatrick, 195 N. Y. 433.)   Declarations of Mrs. Wallace made after the death of James P. Wallace are not admissible to affect the title of Mrs. Wallace to the property given to her absolutely by the will of her husband.   (Gibney v. Marchay, 34 N. Y. 301; Jackson v. Shearman, 6 Johns. 19; Jackson v. Vosburgh, 7 Johns. 186; Baird v. Slaught, 28 N. Y. S. R. 667; McDuffie v. Clark, 39 Hun, 166; Dodge v. Freedman S. & T. Co., 93 U. S. 379; People v. Holms, 166 N. Y. 540; Sanford v. Sanford, 61 Barb. 293; Barnes v. Taylor, 27 N. J. Eq. 259.)

CUDDEBACK, J.— This action was brought to compel specific performance by the defendant Howard Gurdon Wallace, individually and as executor, of a contract made between James P. Wallace and his wife, Juliet Wallace, to execute mutual irrevocable wills.

The complaint alleges that shortly prior to the 18th day of May, 1894, James P. Wallace and his wife, Juliet Wallace, entered into a contract whereby it was agreed that the husband should make his will devising and bequeathing to his wife all his property, real and personal, provided she should be living at the time of his death, and if she was not living, to direct that his estate should be divided into two equal parts, one part going to certain of his relatives, and the other part to certain of his wife's relatives. The contract also provided that the wife should make her last will and testament, devising and bequeathing all her property and estate to her husband, provided he should be living at the time of her death, and if not living, to direct that her property be divided into two equal parts, and disposed of in the same manner and to the same persons mentioned in the will of the husband.

The contract also was that the wills so made should be irrevocable and forever binding upon the parties. The complaint further alleges that the contract was duly executed, and mutual and reciprocal wills were made as provided for on May 18, 1894.

On January 18, 1897, the husband, James P. Wallace, died, and his last will and testament, made according to the provisions of the contract, was duly proved, and his estate was disposed of as provided by the will. Subsequently, and on May 2, 1902, the widow, Juliet Wallace, made another last will and testament contrary to the provisions of the contract, and to the will of May 18, 1894. She died on November 29, 1909, and her will made in 1902 was proved and admitted to probate, and the defendant Howard Gurdon Wallace, the executor therein named, was proceeding to dispose of and distribute the estate of the decedent in compliance with such will when this action was brought.

The plaintiffs were beneficiaries under both wills of Juliet Wallace, but the shares that they would have received under the will of 1894 were considerably larger than those which they

received under the will of 1902. The defendant Howard
Gurdon Wallace was also a legatee under both wills of Juliet
Wallace, but he received a very much larger portion of her
estate as residuary legatee under the second and last will than
under the first.

The will executed by Juliet Wallace on May 18, 1894, could
not be produced on the trial of the action, and secondary evi-
dence was offered to show its contents. The lawyer who drew
the will of the husband, James P. Wallace, in 1894, and who,
it was alleged, had also drawn the will of Juliet Wallace in that
year, was dead at the time of the trial. Three witnesses who
had all been employed by the lawyer were called upon to show
the execution and contents of the missing will.

The first witness, John F. Devlin, testified that he had made
an examination in the office of the deceased lawyer of the papers
connected with the estates of James P. and Juliet Wallace, and
had found what purported to be a typewritten copy of the will
of Juliet Wallace, executed May 18, 1894. The next witness,
Charles Flynn, was a clerk in the office of the same lawyer, and
he testified that he had made the engrossed copy of the will of
Juliet Wallace which was executed, and that he was a witness
to the will and had also witnessed the will of James P. Wallace.
He further testified to the due publication and execution of the
will of Juliet Wallace, and that the other subscribing witnesses
thereto were dead. The third witness, James H. Leddy, was a
stenographer in the same law office. He testified that he had
made the typewritten copy produced by the witness Devlin from
the engrossed copy of the will made by Flynn, and that after
making the copy he compared it with Flynn.

The typewritten copy was thereupon offered and received in
evidence. The testimony of the three witnesses, Devlin, Flynn
and Leddy, was first received by the trial court, but was after-
wards stricken out on motion, and an exception taken to this
last ruling of the court presents the main question argued on

this appeal.  The evidence was struck out as improper under section 835 of the Code of Civil Procedure because it revealed a confidential communication between attorney and client.  With this ruling fell also the typewritten copy of the will, based on the evidence excluded.

The court excluded the testimony upon the authority of Matter of Cunnion (135 App. Div. 864, 201 N. Y. 123).  In that case what purported to be the last will of the testator was offered for probate, and it was sought to show that he had made a subsequent will substantially revoking the one offered.  The second will could not be found, and to prove its contents the attorney who drew the will and his stenographer were called as witnesses.  The attorney produced a paper which was marked for identification, and the stenographer testified that she had made a copy of this paper and returned it with the copy to the attorney.  The attorney then testified that the copy was the second will.  It was held that the evidence of the attorney and his stenographer and the paper offered were properly excluded.

I think that decision is inapplicable and that the case under consideration rather falls within the principle of Hurlburt v. Hurlburt (128 N. Y. 420); Doheny v. Lacy (168 N. Y. 213) and Britton v. Lorenz (45 N. Y. 51).  In Hurlburt v. Hurlburt a father and son went together to an attorney for advice on a matter in which they were both interested.  The father and son were both dead and in a contest between their representatives the court held that the attorney was a competent witness to prove the statements of the deceased clients.  The court said:  "It has frequently been held that the privilege secured by this rule of law (section 835 of the Code) does not apply to a case where two or more persons consult an attorney for their mutual benefit, that it cannot be invoked in any litigation which may thereafter arise between such persons, but can be in a litigation between them and strangers.".

The only material difference between the facts in the case at

bar and Hurlburt v. Hurlburt is that it does not here appear
that both James P. Wallace and Juliet Wallace were present
when the instructions to the attorney regarding the wills were
given.    But it does appear that at the same time and place and
before the same witnesses they executed their mutual wills,
which were prepared by the same attorney, and that such wills
contained reciprocal and identical provisions.

It was not essential that the statements of Mr. and Mrs.
Wallace to the attorney should have been actually made in the
presence of each other to bring the case within the rule laid
down in Hurlburt v. Hurlburt.    If both were not present when
the communications to the attorney were made, it is certain that
such communications were intended for the information of both
of them.    Neither intended what was said to the attorney with
regard to the wills was to be kept a secret from the other.    The
business could not have been done in that way.    The disability
of an attorney to act as a witness applies only when the com-
munications are intended to be confidential.

In Wigmore on Evidence (§ 2312) it is said: " There may
be a relative, not an absolute, confidence.    The chief instance
occurs when the *same attorney acts for two parties* having a
common interest, and each party communicates with him.
Here the communications are clearly privileged from disclosure
at the instance of a third person.    Yet they are not privileged
in a controversy between the two original parties, inasmuch as
the common interest and employment forbade concealment by
either from the other."

It was error for the court to strike out the testimony of the
three witnesses, Devlin, Flynn and Leddy, but the question
remains whether the error was so prejudicial as to require a
reversal of the judgment.

The plaintiffs rely very largely upon the contents of the wills
themselves to establish the fact that there was a contract to
make them irrevocable, and cite the case of Rastetter v. Hoen-

ninger (214 N. Y. 66) to sustain this proposition. In that case there was a joint will, one instrument, executed by husband and wife, giving to the survivor of them the income of their property for life, with the remainder to their children. The court found, from the language used and the attending circumstances, that the will showed an agreement by the parties thereto not to revoke it. The mutual wills in the present case show no such agreement, but, to my mind, rather the contrary.

James P. Wallace and his wife were a childless couple. They had lived together, contented and happy, for many years. It was no doubt their intention that their joint property should go absolutely to the survivor. That purpose their reciprocal wills clearly and surely accomplished. Each gave to the survivor all his or her property absolutely. That absolute gift is strong evidence that the subsequent provision of the wills in favor of collateral relatives remained altogether subject to the control of the survivor.

The case of Edson v. Parsons (155 N. Y. 555, 568, 570) was in many respects very much like the case here. In Edson v. Parsons, two sisters, who were maiden ladies, upwards of the age of sixty years, living together, made their mutual wills, drawn by the same attorney and executed at the same time, before the same witnesses. The scheme of the wills was alike. Each testatrix gave to the other a large part of her estate and made provision for a brother. One of the sisters died and the survivor thereafter executed another will making a different provision for the brother. This court, in sustaining the finding of the trial court, held that the mutual wills showed no contract that they were not to be revoked by the survivor. The court said: " The wills were similarly made and, hence, showed concert of action and similarity of purpose; but not necessarily a binding agreement of such solemnity and far-reaching consequences, as the appellant claims." The court also said: " I think it needs no further argument to show that to attribute to

a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof."

The plaintiffs produce certain extrinsic evidence, which, it is argued, taken with the wills, furnishes proof of an express agreement between James P. Wallace and his wife to make their mutual wills irrevocable.

The plaintiffs called one James P. Hoyt, a cousin of James P. Wallace, who testified that four days before the making of the wills in May, 1894, Mrs. Wallace, in the presence of her husband, said to him, the witness: "James, do you expect anything from your cousin's estate when he dies?" The witness made no reply, and Mrs. Wallace continued: "Well, James, my husband, and I have agreed now to make a final disposition of our property and we are making our mutual wills in accordance with that agreement, and I have to say to you, James, that we have agreed not to include you in our wills and that we have decided to divide our property among our relatives nearer than you, equally dividing the property between the two families, but, James, we shall not forget you. We shall remember you as we have done in the past as long as we live."

The plaintiffs also called Ida T. Whitcomb, a friend of the Wallace family, who testified that James P. Wallace said to her in the presence of his wife that " they had agreed and had made their wills; that the terms of each were identical and that the survivor was to carry out the terms of both wills, and that these wills were final, and that in order to have all definitely arranged they had had a meeting of their family, and the family had been made to understand that they were final." The witness also testified that shortly after the death of James P. Wallace she had a conversation with Mrs. Wallace in which the latter spoke of having much on her mind and to think of, but

that one thing was settled for all time and that was the wills that they had made, and that it would never be changed.

A further piece of testimony relied on by the plaintiffs is a letter written by Mrs. Wallace after her husband's death to one of the firm of attorneys to which the lawyer who had drawn the mutual wills in May, 1894, belonged, regarding a codicil which she executed. In the letter she said: "My husband gave me advice before his death to send at once for you for instructions to probate his will; that I might add a codicil to mine which we both wished for our faithful servants, which he did not think best to add to both of our wills. * * * "

The witnesses James P. Hoyt and Ida T. Whitcomb were not disinterested. The former expected that some provision for his benefit would be made from the estate of James P. Wallace, and the statement to which he testifies was simply notice to him that he would get nothing. I think the same may be said of the latter witness, and she was told by both Mr. and Mrs. Wallace that they had made their wills, and that the wills were final. The letter of Juliet Wallace to the attorneys relating to a codicil to her will is without significance so far as concerns the issues in this action.

The rule of law is that the evidence required to show a contract by one deceased, to dispose of his property in a certain manner after his death, must be clear and convincing, or it will not be regarded as sufficient. (Edson v. Parsons, *supra;* Taylor v. Higgs, 202 N. Y. 65; Rosseau v. Rouss, 180 N. Y. 116; Tousey v. Hastings, 127 App. Div. 94, 194 N. Y. 79.)

The testimony of the witnesses James P. Hoyt and Ida T. Whitcomb fell far short of satisfying this rule, and it was not sufficient, as the trial court held, to show a contract between James P. Wallace and his wife, Juliet, to make mutual irrevocable wills. If to their testimony is now added such evidence as the mutual wills themselves furnish the proof is still insufficient.

The error made in striking out the testimony of the witnesses Devlin, Flynn and Leddy was not, therefore, so prejudicial as to lead to a reversal of the judgment appealed from.   (Post v. Brooklyn Heights R. R. Co., 195 N. Y. 62.)   There are other questions raised by the respondents which, in view of the conclusion reached, it is not necessary to consider.

I recommend that the judgment be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, COLLIN, CARDOZO and SEABURY, JJ., concur.

Judgment affirmed.